**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOHNNY B. HARGROVE,

       Petitioner,

v.                               CASE NO:  8:06-CV-2360-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

       Respondents.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #6).  The Court has considered the petition, Respondents' response (Dkt. #16) and Petitioner's reply (Dkt. #19).  Having reviewed the memoranda, record and proceedings below, the Court concludes that the petition should be denied.

## BACKGROUND

A jury found Petitioner guilty of two counts of attempted first degree murder and one count of shooting at, within, or into a vehicle.  The evidence at trial revealed that Hargrove stepped in front of a car driven by Mr. Freeman with Ms. Davis as a passenger.  Hargrove shot at and hit Mr. Freeman and, as Mr. Freeman attempted to drive away, shot at Ms. Davis with the bullet hitting the passenger side door window.  The trial court adjudicated Hargrove

guilty and sentenced him on each of the attempted first degree murder charges to twenty years in prison, with the sentences running consecutively, and fifteen years in prison on the shooting-into-a-vehicle count to run concurrently with the sentence on count one of attempted first degree murder.

Another count of felonious possession of a firearm had been severed for trial. Hargrove waived a jury trial and was found guilty after a bench trial.  He was sentenced to a prison term of 7.8 years to run concurrently with the previous sentence on count one, attempted first degree murder, plus a three-year minimum mandatory sentence.

Hargrove appealed his jury trial judgments of conviction and sentences.  On July 1, 2005, the state appellate court affirmed the convictions without discussion, but discussed and approved the consecutive twenty year sentences for attempted first degree murder.  Hargrove v. State, 905 So.2d 275 (Fla. 2d DCA 2005).  Hargrove did not further appeal that decision.

Hargrove also appealed his bench trial judgment and sentence.  On April 29, 2005, the state appellate court per curiam affirmed that conviction and sentence without written decision.  Hargrove v. State, 906 So.2d 1069 (Fla. 2d DCA 2005) [table].  Rehearing was denied June 9, 2005, and Hargrove did not seek further review.

Hargrove filed a pro se 3.850 motion for post-conviction relief on April 16, 2006, in which he asserted four claims of ineffective assistance of counsel and one claim of trial court error in admitting hearsay evidence.  The trial court denied the motion without an evidentiary hearing on June 10, 2006.  Hargrove appealed and the state district court affirmed without written decision.  Hargrove v. State, 941 So.2d 375 (Fla. 2d DCA 2006) [table].  The

mandate issued November 28, 2006.

Hargrove then timely filed the instant §2254 petition on January 9, 2007, raising the following grounds concerning his jury trial based sentences:

**Ground One:**      Ineffective assistance of counsel:  Counsel was ineffective for failing to object to consecutive terms of imprisonment for a crime committed during a single episode.

**Ground Two:**      Ineffective assistance of counsel:  Counsel failed to challenge the conviction which lacked the essential elements of the crime charged.

**Ground Three:**      Ineffective assistance of counsel:  Counsel failed to object to the admission into evidence of the testimony of two alleged expert witnesses who were not qualified to give an expert opinion.

**Ground Four:**      Ineffective assistance of counsel:  Counsel failed to object to the prosecution leading the witness during direct examination and preserve the issue for appellate review.

**Ground Five:**      The trial court abused its discretion in allowing the hearsay testimony of Stephen Ellis to be admitted as evidence over the objection of defense counsel.

## STANDARD OF REVIEW

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof.  When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. §2254 places a heavy burden upon the petitioner.  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

  (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or

  (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

  In Williams v. Taylor, 529 U.S. 362, the Supreme Court held:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Additionally, federal habeas relief is available under the "unreasonable application" standard only if the state court's application of clearly established federal law was "objectively unreasonable." Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001).

  In a proceeding under the second standard (an unreasonable determination of the facts), a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).  This statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  McBride v. Sharpe, 25 F.3d 962, 971 (11th Cir. 1994).

  Where a claim of ineffective assistance of counsel is made, a petitioner must  show that counsel's performance was deficient and that the deficient performance prejudiced the

defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Deficient performance is

performance which is objectively unreasonable under the prevailing professional forms.  Id.

at 688.  Prejudice results when there is "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

The Eleventh Circuit has held that "[w]hen applying Strickland, we are free to dispose of

ineffectiveness claims on either of its two grounds.  Oats v. Singletary, 141 F.3d 1018, 1023

(11th Cir. 1998).  "To state the obvious:  trial lawyers, in every case, could have done

something more or something different.  So, omissions are inevitable.  But the issue is not

what is possible or 'what is prudent or appropriate, but only what is constitutionally

compelled."  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)

(quoting Burger v. Kemp, 483 U.S. 776 (1987)).

Under Strickland, "the cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46

F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th

Cir. 1994)).

> The test has nothing to do with what the best lawyers would have done.  Nor
> is the test even what most good lawyers would have done.  We ask only
> whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial . . . We are not interested in
> grading lawyers' performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

## EVIDENTIARY HEARING

When the petition concerns state court proceedings, the factual basis necessary to support a claim for habeas relief in this Court must be developed in the record of state court proceedings, except under very limited circumstances.  See Breard v. Greene, 523 U.S. 371, 376 (1998).  The provisions of the AEDPA governing evidentiary hearings in federal habeas corpus cases are found at 28 U.S.C. §2254(e)(2), which states:

> (2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> A.      the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> B.      the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Consistent with the AEDPA goal of streamlining the habeas process, this provision "expressly limits the extent to which hearings are permissible, not merely the extent to which they are required."  Kelley v. Sec., Dep't of Corr., 377 F.3d 1317, 1337 (11th Cir. 2004), *cert. denied*, 545 U.S. 1149, 125 S.Ct. 2962 (Jun. 27, 2005).

Even if a petitioner convinces the district court that he diligently sought to develop the factual basis of a claim for habeas relief but was denied the opportunity to do so by the

state court, the petitioner must still persuade the district court that the facts supporting the claims for which the evidentiary hearing is requested "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [the petitioner] guilty of the underlying offense."   28 U.S.C. §2254(e)(2)(B).

Petitioner does not meet either of the exceptions in 28 U.S.C. §2254(e)(2).  Therefore, he is not entitled to an evidentiary hearing in this Court.  All facts relevant to his claim must be taken, to the extent they exist, from the state court record.

## **DISCUSSION**

**Ground One:**          Ineffective assistance of counsel:  Counsel was ineffective for failing to object to consecutive terms of imprisonment for a crime committed during a single episode.

In support of this ground, Petitioner argues:

Unless  the evidence presented can identity facts which cannot separate the crimes in terms of times and locations, then the Court must run a simultaneous offense concurrent.  See Locke v. State, 687 So.2d 871 (Fla. 2d DCA 1997).  Here, the Petitioner was charged and convicted of two separate counts of attempted first degree murder arising from a single episode, while shooting into a vehicle occupied by Davis and Freeman.

. . .

The Second District Court has also addressed this issue, and reached the very same conclusion in Sousa v. State, 868 So.2d 538 (Fla. 2d DCA 2003) where Sousa challenged his conviction and sentences for two counts of attempted murder with a firearm and one count of aggravated assault with a firearm as charged in the same information.  The charges arose out of a shooting spree by Sousa . . . involving three victims . . . it is clear from the record that the charges arose from a single criminal episode with the victims being shot in rapid succession . . . the Second DCA affirmed the conviction and the enhanced sentence for use of firearm . . . and agreed with Sousa that the trial

court erred in imposing consecutive sentences.

As a threshold matter, the Court notes that the imposition of sentences by a state court, whether consecutive or concurrent, is strictly a matter of state law. It is not within the purview of this Court to rule upon asserted state trial court errors involving matters purely of state law. This Court is concerned only with the federal constitutional rights of a §2254 petitioner. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475 (1991) ((I)t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States). So, the issue of whether the state trial court was right or wrong in ordering that the sentences be served consecutively is not a matter upon which this Court can grant habeas relief.

Petitioner seeks to circumvent this jurisdictional problem by describing the issue in the title to the argument as an ineffective assistance of counsel claim invoking the Sixth Amendment of the federal Constitution.[1]  As an ineffective assistance of counsel claim, however, it fails under both the deficiency and the prejudice prongs of Strickland. Hargrove made his argument concerning the sentences served consecutively on his direct appeal. The state appellate court affirmed the ruling of the trial court for the sentences to be served consecutively and pointed out to Hargrove that the case upon which he relied (Sousa), had

---

[1] In his argument supporting ground one, Hargrove never mentions the alleged ineffectiveness of his counsel nor demonstrates any prejudice therefrom. His argument is couched in terms of the trial court being in error in imposing consecutive sentences.

been reversed by the Florida Supreme Court.  See State v. Sousa, 903 So.2d 923 (Fla. 2005).

Since consecutive sentences were appropriate under Florida law, it would have been of no

avail for Hargrove's trial counsel to have objected to the trial court's order.   Further,

Hargrove was not prejudiced by his counsel's failure to object.  Where one shoots one person

and shoots at, but misses, another, it is acceptable under Florida law to run the two sentences

consecutively.  State v. Christian, 692 So.2d 889 (Fla. 1997); and State v. Thomas, 487 So.2d

1043 (Fla. 1986).  Therefore, ground one fails.

**Ground Two:**       Ineffective assistance of counsel:  Counsel failed to challenge the
                      conviction which lacked the essential elements of the crime charged.

In support of ground two, Petitioner argues that "the evidence induced (sic) by the

state did not support a *prima facie* case of premeditated attempted murder.  A conviction

lacking the essential elements of the crime charged constitutes fundamental error."

According to Hargrove, his lawyer was ineffective for not challenging the state's failure to

put on evidence of premeditation.

Contrary to Hargrove's position, there was evidence presented from which a jury

could find premeditation.  It is up to the jury to decide whether each element of the charged

crime has been proven beyond a reasonable doubt.  As the government has pointed out, the

"critical inquiry" is "whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781,

2788-89 (1979).

At the trial, Mr. Freeman described the events as follows:

Q.      Okay.  What happened then, sir?

A.      After she takes the seat, I'm sitting there and I'm getting ready to leave and I see a shout.  Somebody like had came out.  Counsel, can you put the - -

Q.      Do you want to see the photo again?

A.      Photo, yes.

Q.      Yes, sir.  Would that help - -

A.      Yes.

Q.      - - demonstrate or explain to the jury what you saw?

A.      Yes, it will.

Q.      All right.

A.      Back here, by those bushes there, I - - in my peripheral vision I saw like a body was walking up, but I wasn't sure what it was.  And the next thing I knew, someone was standing directly in front of my vehicle, who - - that I turned to identify.  Mr. Hargrove was standing directly in front of my vehicle.

Q.      Did you recognize him at that moment?

A.      Yes, I did.

Q.      Okay.  And did the defendant say or do anything as he went to the front of your vehicle?

A.      Yes, he did.  He said something.

Q.      What did he say?

A.      Can I repeat verbatim what he said?

Q.      Yes, sir, you may repeat verbatim what he said.

A.      He walked up to the car and he said that, "I told you if I ever caught you with a man I will kill" - - "I told you if I ever caught you with another fucking man I will kill you."

Q.      Are you still on the cell phone?

A.      Yes.

Q.      Who are you talking to?

A.      At this time I'm still on the phone with a customer.

Q.      Another customer.

A.      Yes.

Q.      And Miss Davis is sitting to your right.

A.      Correct.

Q.      Let me just be sure.  Your vehicle, again, is facing to the right.  So your body position would have been closer to the defendant's house, versus Miss Davis, who was sitting closer to her side of the house.

A.      Correct.

Q.      Okay.  So what happens next, sir?

A.      At that point he stared.  He looked inside the car.  And he had - - evidently he had the gun already in his hand, and he had it from behind him. And I saw him come up real slowly with the gun and said, "I'll kill you, motherfucker.  I told you, don't play me."

Q.      Let me stop you there.

A.      Yes.

Q.      Because I need to - -

A.      Excuse my language.

Q.      - - describe on the record how you were holding your hands.  Because you were demonstrating, and that doesn't go down well.  The court reporter can't take that down.  How was Mr. Hargrove holding the gun?

A.      He had the gun behind his - - behind his leg and he brought the gun up.

Q.      You're motioning with both of your hands out, extended in front of you.  Okay?  Is the gun pointed at you?

A.       Yes, it is.  It's pointed directly at me.

Q.      And he's in front of your vehicle.

A.      Correct.

Q.      All right, sir.  And he made some additional comment?

A.      Well, he kept - - he just made the comment that - - you know, that he told her, that, "If I caught you with a man I would kill you."

        And I start - - at this time I'm yelling at Johnny, "Johnny, this is the AC man, this is the AC man."  Because it's dark outside and I'm thinking - - my thinking was that he didn't know it was me.  And I'm saying, "Johnny, this is the AC man, this is the AC man."

        And at this point I - - you know, I'm telling this guy, who's got this look on his face - - I just - - I knew he was going to shoot me.  He just had this crazed look on his face.  And he fired the shot.

Q.      Let me stop you there.

A.      Yes.

Q.      Just stop you there.  Fired the shot.  Was your car still on?  Had you turned it off?

A.      No, I never did turn my car off.

Q.      Was your headlights still on?

A.      Yes, it was.

Q.      Were you able to see him clearly, even though it getting dark?

A.      Yes.  Yes.

Q.      No doubt it was him, the defendant - -

A.      No.

Q.      - - Johnny Hargrove?

A.      No, absolutely no doubt at all.  My headlights were shining directly on him and I saw him directly because he was standing right in front of my car.

Q.      When you saw the gun pointed at you, before even the shot was fired, what was going through your mind at that moment?

A.      This guy's going to kill me.

Q.      Okay.  What did you do?  Did you try to take some evasive type action?

A.      Yes, I did.

Q.      What did you do?

A.      I put the car in drive with my feet on the brakes.  And when he fired the first shot, I pressed - - I pressed the accelerator, pressed the accelerator to try to get out.  And at that point he - - he started opening up - -

Q.      Let's slow this down a little bit.

A.      Okay.

Q.      He's in front of you.  First shot goes out.

A.      Yes.

Q.      Does it go in your vehicle?

A.      Yes, it does.

Q.      Where does the first bullet go?

A.      I really - - I really can't - - I can't - - I really can't say where the first bullet go.  I don't know if I got hit in the elbow with the first bullet and I got hit in the hand with the second bullet.  I don't know which one.

Q.      Were you struck - -

A.      I didn't know I was struck.

Q.      You didn't know you were struck?

A.      No, I did not.

Q.      Because the excitement of the situation?

A.      Correct.

Q.      Okay.  When the first shot rang out, then what was going through your mind?

A.      This guy's going to kill me.  I need to get out of here.

Q.      When you ducked down in your vehicle, can you describe or demonstrate to the members of the jury how you were trying to hide or conceal yourself?  What did you do with your hands?

A.      Well, what I did was that I had my left hand on the steering wheel, put my right hand on the thing.  I put it in drive.  And when he started to shoot, because he's got the gun in front of me, I tried to duck down on the side.  And I put my hand over my head because he looked like he was aiming for my head.  And that's how I caught the bullet in the hand, because I had my hand over my head like that, ducking down.

Q.      Okay.  When you say you were ducking down, was that towards the middle of the vehicle?

A.      That's correct.

Q.      Okay.  And where was Miss Davis?

A.      She was on the passenger's side.

Q.      Is she ducking down, too?

A.      At this time she had ducked down.

Q.      Is she screaming, yelling?

A.      Yes, she is.

Q.      First shot goes off.  You're ducked down.  You're not sure if you're hit at that moment.

A.      Yes.

Q.      All right.  You were able, of course - - already put the car in gear.  You accelerate.  What happened next?

A.      At that point the car, the PT Cruiser - - this particular one doesn't have a fast take-off.  It just pulled out real slow, even though I got my foot - - I'm pressing the accelerator.  And it kind of like bumped Mr. Hargrove.  And he came around to the side - -

Q.      Which side?

A.      Came around to the passenger's side.  And he pulled the gun out and he went to shoot Miss - -

Q.      Miss Davis?

A.      Miss Davis.  He went to shoot Miss Davis in the head and I was able to pull off.  And the bullet hit right at the side where her head was, hit the thing, and I pulled off and I kept going.  And as I'm going, I hear gunshots.

        And at this point, this is when I really noticed that I really been hit.  And I'm really petrified because I don't know if I've been hit in the body.  I see the blood.  I knew I was hit in the hand.  My elbow was starting to hurt.  I knew I was hit in the elbow.  But I was really concerned at that time that I needed to try to get to the emergency room because I didn't know if I got hit in the body or not.

(Trial transcript, Volume 1, pp. 26, l. 7- 33, l. 6.)

The evidence was more than sufficient for a jury to conclude that the shootings were premeditated.  It is not ineffective assistance of counsel for a lawyer to fail to make an objection that has no merit.  Therefore, Hargrove's lawyer's failure to object to the sufficiency of evidence on the element of premeditation was neither deficient performance nor was Hargrove prejudiced thereby.  Ground two fails both prongs of <u>Strickland</u> and will be denied.

**<u>Ground Three:</u>**   Ineffective assistance of counsel:  Counsel failed to object to the admission into evidence of the testimony of two alleged expert witnesses who were not qualified to give an expert opinion.

While Petitioner's title to ground three refers to the testimony of two alleged expert witnesses, the body of his argument only cites the testimony of Mr. Brent Goodman, a forensic technician.  Mr. Goodman's testimony takes up only four pages (Volume 1, pp. 62-65) and does not involve expert testimony.  Mr. Goodman went to the hospital to photograph the injuries to Mr. Freeman's elbow and hand.  One need not be an expert to testify that he or she took the photographs in question and that they accurately depict what was observed on the day the photographs were taken.

Once again, a lawyer is not ineffective for failing to make non-meritorious objections.  A failure to object in this instance was neither deficient performance nor prejudicial to Hargrove's case.  Therefore, ground three will be denied.

**<u>Ground Four:</u>**   Ineffective assistance of counsel:  Counsel failed to object to the prosecution leading the witness during direct examination and preserve the issue for appellate review.

It often is sound trial strategy to not object to leading questions.  Too many objections run the risk of a jury thinking a lawyer is being obstructionist or the party he represents has something to hide.  Here, trial counsel is certainly not deficient in failing to object to the few leading questions asked by the prosecutor.  And, Hargrove has not shown that the outcome of the trial would have been any different had his lawyer objected.  Therefore, ground four fails both <u>Strickland</u> prongs and will be denied.

**<u>Ground Five:</u>**        The trial court abused its discretion in allowing the hearsay testimony of Stephen Ellis to be admitted as evidence over the objection of defense counsel.

This argument is procedurally barred because it was not raised on direct appeal in the state court, and, even if it had been properly raised, it is not a ground upon which habeas relief can be granted in federal court because it deals merely with state evidentiary matters.

When Hargrove raised this issue in his 3.850 motion, the state trial court found it to be procedurally barred because the claim should have been raised on direct appeal.  This ruling was affirmed by the state district court of appeal without opinion.  A claim that is procedurally barred in state court is also procedurally barred here.  <u>Harmon v. Barton</u>, 894 F.2d 1268 (11th Cir. 1990) (where trial court finds procedural default, state appellate court's silent affirmance is a finding of procedural default by last state court to rule on question).

Further, a claim that evidence was incorrectly admitted is a matter of state law only. Federal habeas corpus relief does not lie for errors of state law.  <u>Lewis v. Jeffers</u>, 497 U.S. 764, 110 S.Ct. 3092 (1990).  The Supreme Court has been quite clear on this issue.  "Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991).

For both of these reasons, ground five will be denied.

## CONCLUSION

Having determined that each ground raised by Petitioner is insufficient to support habeas relief, the petition for writ of habeas corpus (Dkt. #6) is hereby DENIED.

It is therefore ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. #6) is DENIED.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on October 21, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies Furnished To**</u>:
Counsel/Parties of Record

*F:\Docs\2006\06-cv-2360.deny 2254.wpd*